UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) Cause No. 1:12-cv-1671-WTL-MJD |
| vs. | ) ) |
| WILLIAM F. CONOUR, et al. | ) ) |
| Defendants. | ) |

### ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTIONS FOR DEFAULT JUDGMENT

This cause is before the Court on the motion for summary judgment (dkt. no. 154) and the motions for default judgment (dkt. nos. 148-153) filed by Plaintiff Minnesota Lawyers Mutual Insurance Company ("MLM"). The motions are ripe for ruling,[1] and the Court, being duly advised, **GRANTS** the motions for the reasons set forth below.

### I. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court accepts as true the admissible evidence presented by the non-moving party and draws all reasonable inferences in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the

---

[1] Each of MLM's motions is unopposed.

burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

On April 27, 2012, Defendant William Conour was charged by criminal complaint in the United States District Court for the Southern District of Indiana with misappropriating client funds in violation of 18 U.S.C. § 1343.[2] The complaint alleged, in part, that Conour ran a so-called "Ponzi scheme" with clients' settlement funds and converted a large portion of those settlement funds to his own use and benefit. Shortly thereafter, the Disciplinary Commission of the Supreme Court of Indiana instituted disciplinary proceedings against Conour. Conour eventually resigned from the Indiana Bar, and the disciplinary proceedings against him were dismissed on June 28, 2012.

On July 15, 2013, Conour pled guilty to one count of wire fraud. During his change of plea hearing, he admitted that:

> Beginning as early as 1999 and continuing through April 2012, in Hamilton and Marion Counties and elsewhere in the Southern District of Indiana, [he] . . . knowingly devised and participated in a scheme to defraud and to obtain money and funds from his clients and others by means of materially false and fraudulent pretenses, representations, and promises . . .
>
> It was part of the scheme that after receiving settlement funds on behalf of some clients, [he] convinced the clients to accept monthly payments over a period of years rather than to accept a lump sum payment. [He] created trust accounts for the clients through State Bank & Trust, doing business as Reliance Financial Services, and Ohio Financial Institution, to facilitate the monthly payments. Rather than depositing the entire amount of settlement funds with Reliance, [he] funded the trusts only on a yearly basis, thereby unlawfully keeping for his own use and benefit the bulk of the settlement proceeds totaling more than $3 million.

---

[2] *See United States v. Conour*, 1:12-cr-129-RLY-TAB (S.D. Ind.).

> It was further part of the scheme that after receiving settlement funds on behalf of some clients, [he] failed to notify the clients that he had received settlement funds on their behalf, and in some cases falsely denied that he had received any settlement funds. Thereafter, [he] unlawfully converted the settlement funds to his own use and benefit and, in part, used the settlement funds obtained for some clients to make settlement payments to other clients.
>
> It was further part of the scheme that [he] stole, misappropriated, and unlawfully converted to his own use more than $4,500,000 belonging to more than 25 clients. On or about October 6, 2011, in the Southern District of Indiana and elsewhere, [he], for the purpose of executing the above-described scheme, knowingly caused to be transmitted in interstate commerce, by wire communication, certain writings, signs, and signals, namely a facsimile transmission from his office in Indianapolis, Indiana to Zurich American Insurance in New Jersey, which contained [a client's] release and indemnification agreement.

Dkt. No. 155-5 at 12-14. Conour was thereafter sentenced to 120 months in prison and ordered to pay restitution to the client-victims.

Prior to that, MLM issued a series of claims made and reported attorney malpractice insurance policies to Conour's law firms beginning in 2007. The MLM policy number, named insured, and effective policy dates of each of the MLM policies were as follow:

> Policy No. 27625 01
> Named Insured: Conour Law Firm, LLC d/b/a Conour-Daly, Attorneys
> Effective: 09/29/07 – 09/29/08 (the "2007-2008 Policy")
>
> Policy No. 27625 02
> Named Insured: Conour Law Firm, LLC
> Effective: 09/29/08 – 09/29/09 (the "2008-2009 Policy")
>
> Policy No. 27625 03
> Named Insured: Conour Law Firm, LLC
> Effective: 09/29/09 – 10/01/10 (the "2009-2010 Policy")
>
> Policy No.1-M2K-27625-4
> Named Insured: Conour Devereux Hammond
> Effective: 10/01/10 – 10/01/11 (the "2010-2011 Policy")
>
> Policy No. 27625 05
> Named Insured: Conour Devereux
> Effective: 10/01/11 – 10/01/12 (the "2011-2012 Policy")

The policies are collectively referred to as the "MLM Policies," and the named insureds are collectively referred to as the "Conour Law Firms."

In deciding whether to issue the MLM Policies to the Conour Law Firms, MLM relied upon statements (and omissions) made by Conour and the Conour Law Firms in various applications, requests, certifications, and warranties that were provided to MLM. Prior to issuing the MLM Policies, "MLM had no knowledge that Conour was embezzling, misappropriating or converting clients' funds." Dkt. No. 155-1 at ¶ 27. Indeed, "MLM would not have issued any of the MLM Policies if Conour had disclosed that he was embezzling, misappropriating or committing conversion of clients' funds, regardless of whether or not Conour intended to pay back his clients the money he had taken." *Id.* at ¶ 30.

The 2007-2008 Policy, 2008-2009 Policy, 2009-2010 Policy, and 2010-2011 Policy expired without any claims being made or reported.[3] On May 24, 2012, approximately one month after the United States initiated wire fraud charges against him, Conour wrote a letter to MLM's claims department advising it of "possible claims that may exist against [his] law firm" regarding "discrepancies in the firm trust account." Dkt. No. 39-10. He advised, however, that "[n]o claims [had] yet been filed." *Id.* He did not mention the pending criminal charge. On September 28, 2012, Conour notified MLM by letter of "[p]otential legal negligence claims against [him]" by several former clients. Dkt. No. 39-11. Again, however, he did not mention the wire fraud charge. On October 31, 2012, Conour provided MLM with suit papers filed by one of

---

[3] Again, MLM issued claims made and reported policies as opposed to "occurrence" policies to Conour's law firms. "Claims-made and occurrence-based insurance policies insure different risks. 'In the occurrence policy, the risk is the occurrence itself. In the claims made policy, the risk insured is the claim brought by a third party against the insured.'" *Med. Protective Co. v. Kim*, 507 F.3d 1076, 1082 (7th Cir. 2007) (quoting *Cont'l Cas. Co. v. Coregis Ins. Co.*, 738 N.E.2d 509, 518 (2000)).

Conour's former clients, Dustin Webb.[4] At no time did Conour notify MLM of the criminal complaint or disciplinary action against him.

Thereafter, MLM investigated the "possible claims," "potential legal negligence claims," and the Webb suit. Through its own investigation, MLM discovered the criminal case and the disciplinary action. On November 12, 2012, MLM notified Conour by letter that it would not be providing a defense to Conour in the Webb case. It also advised Conour that it would be filing a declaratory judgment action seeking to rescind the MLM Policies, or alternatively, a determination of no coverage as to the MLM Policies. The very next day, MLM initiated the present action against Conour, Conour's Law Firms (and his partners at those firms), and several of Conour's former clients. MLM also tendered a check in the amount of $16,337.00 for deposit with the Clerk fully refunding the premium payments for the MLM Policies. MLM's amended complaint seeking rescission, or in the alternative, a determination of no coverage, was filed on December 14, 2012. MLM now seeks summary judgment on those issues.

### III. DISCUSSION

MLM argues that it is entitled to rescission of the MLM Policies due to the material misrepresentations and omissions of Conour and his Law Firms over the years. The Court agrees.

> The right to void coverage due to fraud in the making of [an insurance] policy is well established in the common law. . . . [T]his protects the insurer's right to know the full extent of the risk it undertakes when an insurance policy is issued. Accordingly, a material misrepresentation or omission of fact in an insurance application, relied on by the insurer in issuing the policy, renders the coverage voidable at the insurance company's option.

*Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 672 (Ind. 1997) (citation omitted).

---

[4] Webb's father was killed in a motor vehicle accident; Conour was one of several attorneys who were retained to provide representation as a result of his death. The parties ultimately reached a settlement and Conour assumed possession of the settlement proceeds. Webb alleged that he was not given "his portion of the settlement funds." Dkt. No. 39-12.

> Under one definition, a misrepresentation or omission is "material" if knowledge of the truth would have caused the insurer to refuse the risk or to charge a higher premium for accepting the risk. . . . This inquiry focuses on whether the representation was false and material to the decision to issue the policy. Whether the applicant intended to mislead or knew of the falsity is irrelevant: False representations, concerning a material fact, which mislead, will avoid an insurance contract, like any other contract, regardless of whether the misrepresentation was innocently made or made with a fraudulent design. . . . A second approach to materiality in a case . . . where rescission is attempted after a loss has been incurred, would measure the materiality not against the underwriting decision, but rather against the loss. In other words, coverage of the incurred loss would be voided if the misrepresentation affected that risk, but not all coverage would necessarily be voided. Under either view, the materiality of the representation or omission is a question of fact to be resolved by the factfinder unless the evidence is such that there can be no reasonable difference of opinion.

*Id.* at 673 (citations and quotations omitted). Later, the Indiana Court of Appeals determined that the "second approach applies only to an attempted partial rescission of a policy, and . . . limited use of [the] second approach to the context of automotive financial responsibility laws." *Allied Prop. & Cas. Ins. Co. v. Good*, 938 N.E.2d 227, 233 (Ind. Ct. App. 2010). MLM is not seeking partial rescission, and the MLM Policies are not automobile insurance policies. Thus, the first definition is applicable to this case. Under that definition, it is clear that Conour made several material misrepresentations and omissions to MLM, which were thereafter relied on by MLM in issuing the MLM Policies.

In 2007, before MLM issued its first policy to the Conour Law Firms, the Firm answered "no" to the following question in its insurance application: "Is any firm member aware of any INCIDENT (whether previously reported or not), which COULD REASONABLY result in a claim being made against the applicant, its predecessors or any past or present firm members? The answer should include meritless cases and claims currently not in suit." Dkt. No. 39-5 at 15. Conour further certified that "all known claims and all known incidents which might become a claim have been reported to the present or previous insurance carriers and the applicant has no

6

knowledge of any threatened litigation or existing fact or situation which could result in a claim being filed against the applicant." *Id.* at 23. Conour also certified that he was not "aware of any claims or circumstances that could result in claims or disciplinary actions that have not been reported to [MLM]." *Id.* at 24. Each year thereafter, Conour made similar representations and certified that there had "been no significant changes in practice or [in] any information contained in the previously submitted application(s)." *See, e.g.*, Dkt. No. 39-9 at 17.[5]

These representations, however, were false. As early as 1999, Conour began operating a scheme to defraud his clients out of their settlement funds. At no time did he share this information with MLM. In fact, Conour never notified MLM of the federal wire fraud charge or the disciplinary action against him.

Moreover, the misrepresentations and omissions of Conour and his Law Firms were material. "MLM would not have issued any of the MLM Policies if Conour had disclosed that he was embezzling, misappropriating or committing conversion of clients' funds, regardless of whether or not Conour intended to pay back his clients the money he had taken." Dkt. No. 155-1 at ¶ 30. This fact is not disputed. Accordingly, MLM is entitled to rescission of the MLM Policies. *See also Minnesota Lawyers Mut. Ins. Co. v. Hancock*, 600 F. Supp. 2d 702, 704 (E.D. Va. 2009) (finding that MLM was entitled to rescission of legal malpractice insurance policy where attorney embezzled money from firm, but represented to MLM that he was not aware of any incident which could reasonably result in a claim being made against him.). Because MLM is entitled to summary judgment on this issue, the Court need not address MLM's alternative claim seeking a determination of no coverage under the MLM Policies.

---

[5] Although, over the years, the exact language of this certification changed, the meaning and substance of the certification did not.

## IV. MOTIONS FOR DEFAULT JUDGMENT

Also pending are motions for default judgment against the Conour Law Firms and James and Rhonda Fox. The Clerk entered default against the Conour Law Firms on August 8, 2013, and against James and Rhonda Fox on February 24, 2014. No monetary damages are sought by MLM. Therefore, MLM is entitled to default judgment against those Defendants.

## V. CONCLUSION

For the reasons set forth above, the Plaintiff's motion for summary judgment is **GRANTED**. The Plaintiff's motions for default judgment are also **GRANTED**.

The Court, however, is withholding final judgment in this matter pending the disbursement of the funds tendered to the Clerk by MLM (i.e., $16,337.00 plus interest). The Court takes judicial notice of the criminal proceedings against Conour and the fact that Conour is under a Restitution Order by the criminal court. *See United States v. Conour*, 1:12-cr-129-RLY-TAB, Dkt. No. 178 (S.D. Ind.). The Court also takes judicial notice of the fact that other funds being held in Conour's name have been garnished by that court. *Id.* at Dkt. No. 172. **The Clerk shall thus send a copy of this Entry to the Assistant United States Attorney representing the Government in the criminal matter and noted in the distribution list below.**

**The parties and the Assistant United States Attorney shall have thirty days from the date of this Entry to advise the Court on how the funds should be disbursed.**

SO ORDERED: 10/08/14

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copies by U.S. Mail to:**

    **William F. Conour**
    **10620-028**
    **Morgantown Federal Correctional Institution**
    **Inmate Mail/Parcels**
    **P.O. Box 1000**
    **Morgantown, WV 26507**

    **Gail L. Noll**
    **UNITED STATES ATTORNEY'S OFFICE**
    **CENTRAL DISTRICT OF ILLINOIS**
    **318 South Sixth Street**
    **Springfield, IL 62701**

Copies to all counsel of record via electronic communication.