# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| WILLIAM F. CONOUR, et al. | ) ) ) |
| Defendants. | ) |

Cause No. 1:12-cv-1671-WTL-MJD

## ENTRY CONCERNING DISBURSEMENT OF FUNDS

On October 8, 2014, the Court entered summary judgment in favor of the Plaintiff, Minnesota Lawyers Mutual Insurance Company ("MLM"). Dkt. No. 166. The Court also entered default judgment against several of the Defendants. *Id.* at 8. At that time, however, due to the restitution order in Defendant William Conour's criminal case, *United States v. Conour*, 1:12-cr-129-RLY-TAB, Dkt. No. 178 (S.D. Ind.)., the Court withheld final judgment and ordered the parties to advise the Court on how the funds previously tendered to the Clerk of the Court by MLM should be disbursed.

On November 7, 2014, MLM instructed the Court as follows:

> [T]he $16,337.00 previously tendered to the Court by MLM and any accrued interest should not be disbursed to Conour, but rather should be removed from the interest bearing account and turned over to the Clerk of this Court to be applied as payment toward the restitution owed by Conour in the Conour Criminal Action. . . . The order of restitution in the Conour Criminal Action constitutes a lien in favor of the United States on all of Conour's property or rights to property as if the liability were liability for a tax assessed under the Internal Revenue Code of 1986. 18 U.S.C. § 3613(c).

Dkt. No. 167 at 2-3. MLM, however, also advised the Court that one of Conour's creditors, ACF 2006 Corp., would be making a claim as to the deposited funds. As such, the Court gave ACF

twenty-one days to show cause as to why the funds should not be applied to the restitution order. Dkr. No. 169. ACF timely responded on December 30, 2014. Dkt. No. 171.

In short, ACF argues that its security interest has priority over the lien created by the restitution order in the criminal matter. According to ACF, on January 28, 2008, Conour and the Conour Law Firm, LLC (collectively referred to as "Conour") executed a Master Loan and Security Agreement in favor of Advocate Capital, Inc., the predecessor in interest to ACF (for purposes of clarity, the Court will refer to Advocate as ACF). An Amended Loan and Restated Master Loan and Security Agreement was executed on January 28, 2010 (the two loan agreements are hereafter referred to as the "Loan Agreements"). Under the Loan Agreements, ACF made various loans to Conour, which were due and payable in full on January 18, 2012.

The Loan Agreements also granted ACF a continuing security interest in the following collateral owned by Conour:

> All accounts, instruments, chattel paper, general intangibles, payment intangibles (all as defined in Article 9 of the Code), and all similar rights that Borrower may have of every nature and kind, including specifically and without limitation, all of Borrower's rights to receive payment or otherwise, for legal and other services rendered and to be rendered, and for costs and expenses advanced and to be advanced, and all other rights and interest that Borrower may have in and with respect to each and every Client Matter.

Dkt. No. 171-1 at 6-7. ACF perfected its security interest by filing a UCC financing statement with the Indiana Secretary of State on January 28, 2008. Subsequent UCC financing statements were filed on July 3, 2012 and November 12, 2012.

On January 18, 2012, the loans matured. Conour, however, failed or refused to pay the principal and related funds due under the Loan Agreements. Thereafter, ACF filed suit against Conour seeking to recover on the debt. *See ACF 2006 Corp. v. Conour, et al.*, 1:13-cv-1286-TWP-DML (S.D. Ind.). The Clerk entered default against Conour in that case on November 18,

2013. *Id.* at Dkt. No. 35. As of the date of this entry, however, no default judgment has been entered against Conour.

In that collection matter, ACF advised the court that, as of May 31, 2014, the total amount of principal, interest, fees and expenses owed to ACF pursuant to the Loan Agreements was $681,133.24, which included a principal in the amount of $400,050.81, accrued but unpaid interest in the amount of $190,030.15, and fees and expenses in the amount of $91,052.28. *Id.* at Dkt. No. 60 at ¶ 21.

First, the Court agrees that the refunded insurance premiums currently being held by the Clerk are accounts, general intangibles, and/or payment intangibles under the UCC and are covered by the Loan Agreements and the UCC financing statements. *See, e.g.*, *In re Iroquois Energy Mgmt., LLC*, 284 B.R. 28, 31 (Bankr. W.D.N.Y. 2002) (refund for overpayment of natural gas is general intangible). Thus, ACF has an interest in the funds.

Next, the Court must determine whether ACF's security interest has priority over the restitution order from the criminal matter. Pursuant to 18 U.S.C. § 3613(c), "an order of restitution . . . is a lien in favor of the United States on all property and rights to property of the person . . . as if the liability of the person . . . were a liability for a tax assessed under the Internal Revenue Code of 1986. The lien arises on the entry of judgment." However, "[f]ederal tax liens do not automatically have priority over all other liens. Absent [a] provision to the contrary, priority for purposes of federal law is governed by the common-law principle that '"the first in time is the first in right."' *U.S. By & Through I.R.S. v. McDermott*, 507 U.S. 447, 449 (1993) (quoting *United States v. New Britain*, 347 U.S. 81, 85 (1954)).

In this case, ACF perfected its security interest beginning on January 28, 2008. The restitution order was not issued in the criminal matter until October 28, 2013, and it was not

recorded with the Marion County Recorder's Office until April 15, 2014. Accordingly, ACF's security interest was "first in time" and thus has priority over the restitution order.[1] As such, the funds previously tendered to the Clerk of the Court by MLM shall be disbursed to ACF.

**Pursuant to the Court's order on November 16, 2012 (Dkt. No. 9), MLM deposited on November 13, 2012, the sum of $16,337.00 into the registry of the Court, which the Court directed to be deposited in an interest bearing account. The Clerk is hereby authorized and directed to withdraw the $16,337.00 principal amount plus all interest accrued and to deduct and withhold from that combined amount a registry fee determined as a percentage of the income earned on the investment, not to exceed ten percent (10%).[2] Disbursement of the remaining funds shall be made to:**

**ACF 2006 Corp.[3]**
**c/o Blackwell, Burke, & Ramsey, P.C.**
**111 Monument Circle, Suite 452**
**Indianapolis, IN 46204**

SO ORDERED: 5/4/15

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

---

[1] The Court also takes judicial notice of the following statement in the affidavit of Paul Myers in the *ACF 2006 Corp. v. Conour* matter: "The United States informed ACF through counsel that it did not intend to intervene in this action because its lien is subordinate to ACF's security interest." Dkt. No. 61 at ¶ 25.

[2] *See* Funds Deposited with the Court, United States District Court, Southern District of Indiana, http://www.insd.uscourts.gov/funds-deposited-court.

[3] Before a check shall issue to ACF, it must complete an IRS Taxpayer Identification Form (W-9) certifying its tax payer identification number and submit the same to the Clerk of the Court.

**Copies by U.S. Mail to:**

> **William F. Conour**
> **10620-028**
> **Morgantown Federal Correctional Institution**
> **Inmate Mail/Parcels**
> **P.O. Box 1000**
> **Morgantown, WV 26507**
>
> **Gail L. Noll**
> **UNITED STATES ATTORNEY'S OFFICE**
> **CENTRAL DISTRICT OF ILLINOIS**
> **318 South Sixth Street**
> **Springfield, IL 62701**

Copies to all counsel of record via electronic communication.